## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NEVSE BREWSTER, | ) | |
| WESLEY HANSON, | ) | |
| DONNA SMITH | ) | |
| individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| AMERICAN HEALTH IMAGING, | ) | |
| INC., | ) | Jury Trial Demanded |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, Nevse Brewster, Wesley Hanson, and Donna Smith, individually and on behalf of the Class defined below of similarly situated persons, allege the following against American Health Imaging, Inc. ("AHI") based upon personal knowledge and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## INTRODUCTION

1.      This class action arises out of the recent data breach on AHI's network that occurred between December 17 and December 24, 2001 ("Data Breach"). As a result of the Data Breach, Plaintiffs, who were notified that their information was breached by an unauthorized party, and similarly situated individuals, suffered

1

irreparable damage when their sensitive personal and protected health information was compromised and unlawfully accessed.

2.      AHI admits that it was unable to determine what specific files the unauthorized actor viewed within the AHI network and because the impacted systems contained certain information related to individuals provided by its patients the company did not say definitively what personal information was accessed by the unauthorized actor.[1]  Nevertheless, the information compromised in the Data Breach is believed to have included highly sensitive data that represents a gold mine for data thieves. This includes **current and former patient names and one or more of the following: address, date of birth, health insurance information, medical record number, patient account number, physician name, date(s) of service, diagnosis, and/or treatment information related to radiology services, and Social Security numbers** (collectively the "Private Information").

3.      The compromised information includes personally identifiable information ("PII"), which according to the United States General Services Administration, refers to information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual, and includes name, address and date of birth, among other identifiers.

4.      Compromised information also includes protected health information ("PHI"), which is a subset of PII, and is defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d *et seq.,* as health information that can be tied to an individual through one or more of 18 identifiers,

---

[1] *Notice of Data Security Event,* American Health Imaging, *available at* https://americanhealthimaging.com/wp-content/uploads/2022/09/AHI-Substitute-Notice_9.2.22.pdf (last visited November 2, 2022).

including name, geographical identifiers smaller than a state, medical record numbers, account numbers, and health insurance beneficiary numbers.

5.     AHI learned about the data breach on December 24, 2021, but did not notify the Plaintiffs until September 8, 2022 that they had been affected, over nine months after discovering the breach. Despite this delay, the notification letter sent by AHI did not offer to change the Plaintiffs' Member ID or recommend protective measures aside from recommending that Plaintiffs "review the statements they receive from their health insurer."

6.     Armed with the Private Information accessed in the Data Breach, and a nine month head start, data thieves can commit a variety of crimes including, e.g., using Class Members' names and insurance information to obtain medical services, using Class Members' health information to target other phishing and hacking intrusions based on their individual health needs, using Class Members' information to obtain government benefits.

7.     As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now and in the future closely monitor their financial accounts and healthcare plans to guard against identity theft, including medical identity theft. Plaintiffs and Class Members may also incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.  Plaintiffs and Class Members may also incur out of pocket costs for changing healthcare plan member information and monitoring medical documentation to protect themselves against medical identity theft.

8.     Therefore, Plaintiffs and Class Members will show that they have suffered ascertainable losses in the form of the loss of the benefit of their bargain,

out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

9.     AHI knew or should have known of the dangers of a data breach that could impact hundreds of thousands of consumers and the importance of protecting Private Information.

10.    Plaintiffs bring this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and Class Members that their information had been subject to the unauthorized access and precisely what specific type of information was accessed.

11.    The potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to AHI, who were on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

12.    Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that AHI collected and maintained, is now likely in the hands of data thieves and unauthorized third-parties.

13.    Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

14.    Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to AHI's data security systems, future annual audits, and adequate credit monitoring services funded by Defendants.

## **PARTIES**

15.     Plaintiff Nevse Brewster is, and at all times mentioned herein was, an individual citizen of the State of Texas residing in the City of New Braunfels in Comal County.

16.     Plaintiff Wesley Henderson is, and at all times mentioned herein was, an individual citizen of the State of Georgia residing in the City of Atlanta in DeKalb County.

17.     Plaintiff Donna Smith is, and at all times mentioned herein was, an individual citizen of the State of Georgia residing in the City of Hoboken in Brantley County.

18.     American Health Imaging, Inc. is a healthcare entity incorporated in Georgia and has a principal place of business at 2200 Century Parkway NE, Suite 600, Atlanta, Georgia 30345.

## **JURISDICTION AND VENUE**

19.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant including the named Plaintiffs here. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has personal jurisdiction over Defendant because Defendant transacts business within the State of Georgia and committed one or more tortious acts in this District.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this

District. Defendant has caused harm to Class Members residing in this District. Additionally, the AHI headquarters is located within the District.

## RELEVANT FACTUAL ALLEGATIONS

22.    Plaintiffs and Class Members received medical imaging services from AHI. AHI provides MRI, CT Scans, Ultrasounds, X-Rays and similar imaging services to the public.

23.    In the ordinary course of obtaining healthcare, patients are required to provide sensitive personal and private information such as:

- Names;
- Addresses,
- Dates of birth;
- Gender;
- Social Security numbers;
- Medical histories including health conditions; and
- Other sensitive health information provided during a healthcare insurance health assessment.

Plaintiffs and Class Members provided this information to AHI to obtain medical imaging services.

24.    The AHI privacy policy on its website refers to responsibilities to comply with HIPAA. AHI is also covered by the Health Information Technology for Economic and Clinical Health ("HITECH") Act, 42 U.S.C. § 300jj *et seq.;* § 17901 *et seq.*  Under the HITECH Act, HIPAA covered entities must promptly notify affected individuals of breaches of PHI, as well as the HHS Secretary and the media in cases where a breach affects more than 500 individuals.

25.    AHI states in its privacy practices that it is responsible for protecting members' health information and further states AHI is required by law to maintain the privacy and security of members' protected health information.[2]

26.    It was objectively reasonable for Plaintiffs and Class Members to understand their relationship with AHI to include the privacy policies of AHI and its vendors.

27.    As part of its normal operations, AHI obtains and stores PII and PHI of individuals who are patients of AHI.

28.    On information and belief, AHI uses centralized servers to store data provided by patients, including patient PII and PHI.

29.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known, *inter alia*, that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

30.    Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

31.    Plaintiff and the Class Members relied on AHI to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

32.    Plaintiffs and Class Members would not have received services from AHI had it disclosed that it did not have procedures to ensure it had adequate safeguards, procedures, and systems to reasonably protect their Private Information.

---

[2] *Privacy Policy,* AHI, *available at* https://americanhealthimaging.com/privacy-policy/ (last visited November 3, 2022).

## Data Breaches In Healthcare

33.    According to the Ponemon Institute and Verizon Data Breach Investigations Report, the health industry experiences more data breaches than any other sector.[3] Regular PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[4] However, PHI can sell for as much as $363 according to the Infosec Institute.[5] This is because one's personal health history, can't be changed, unlike credit card information.

34.    PHI has increased value because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can also be used to create fake insurance claims, allowing for the purchase and resale of medical equipment. Some criminals use PHI to illegally gain access to prescriptions for their own use or resale.

## Data Breach

35.    According to AHI, on December 24, 2001, it identified unauthorized access on its computer systems. AHI launched an investigation to determine the nature and scope of the cyberattack. As a result of the investigation, AHI determined that there was unauthorized access to certain AHI servers beginning on December 17, 2021.

36.    AHI claims it began notifying affected individuals on September 8, 2022, however, Plaintiffs received notification letters dated September 2, 2022, more than nine months following the discovery of the suspicious activity.

---

[3] *Data Breaches: In the Healthcare Sector*, Center for Internet Security, *available at* https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited August 10, 2022).
[4] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (October 16, 2019), *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.
[5] *Data Breaches: In the Healthcare Sector*, Center for Internet Security, *available at* https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited August 10, 2022).

37.    On information and belief, for all individuals affected, the compromised data includes current and former patient names and one or more of the following: address, date of birth, health insurance information, medical record number, patient account number, physician name, date(s) of service, diagnosis, and/or treatment information related to radiology services, and Social Security numbers. However, on information and belief, AHI has not notified the individuals who belong to the subset of individuals who have had additional PHI compromised.

38.    This compromised PII and PHI can and likely will be sold either on the dark web or by other nefarious actors.

39.    Defendant had obligations created by HIPAA, contract, industry standards, common law, and representations made directly or indirectly to Plaintiffs and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

40.    AHI had a duty to adopt reasonable measures to protect the Private Information of Plaintiffs and Class Members from involuntary disclosure to third parties.

41.    Plaintiff and Class Members provided their Private Information to AHI with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of security breaches.

42.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

43.    Defendants knew or should have known that AHI's electronic records would be targeted by cybercriminals.

44.     On information and belief, AHI failed to implement sufficient measures to prevent cyberattacks and to safeguard Plaintiffs' and Class Members' Private Information.

45.     AHI could have prevented, but on information and belief they failed to prevent, this Data Breach by properly securing and encrypting the systems containing Plaintiffs' and Class Members' Private Information.

46.     AHI was negligent by ignoring repeated warnings and alerts directed to companies that store Private Information, including PHI, to protect and secure the sensitive data they possess.

47.     Despite the prevalence of public announcements of data breaches targeting entities that store PHI, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

## Notice to Plaintiffs

### Plaintiff Nevsa Brewster

48.     Plaintiff Ms. Brewster was a patient of AHI for health imaging services.

49.     As a mandatory part of receiving healthcare from AHI, Ms. Brewster provided PII, medical history and sensitive private health information for herself to AHI.

50.     AHI created and maintained records that contained sensitive health information regarding Ms. Brewster.

51.     Ms. Brewster received a letter from AHI, dated September 2, 2022. This letter informed her that her data may have been compromised by the data security incident discovered on December 24, 2021. The letter stated that the information impacted includes Ms. Brewster's "name, address, date of birth, health insurance

information, medical record number, patient account number, physician name, date(s) of service, and/or information related to radiology services."

52.    The notice letter from AHI contains a recommendation that Ms. Brewster "always review the statements you receive from your health insurer. If you see charges for services you did not receive, please call the insurer immediately." However, other than providing a call center number that victims could contact with "any questions," AHI offered no other substantive steps to help victims like Plaintiff and the Class Members to protect themselves.

53.    On information and belief, AHI sent a similar generic letter to all individuals affected.

54.    Ms. Brewster has received additional scam phone calls and email since the Data Breach, including emails referencing her health condition and regarding medications she takes.  Ms. Brewster believes that the increased scam calls and emails are a direct result of the AHI breach.

**Plaintiff Wesley Hansen**

55.    Plaintiff Mr. Hansen was a patient of AHI for health imaging services.

56.    As a mandatory part of the new patient intake with AHI, Mr. Hansen provided his PII, medical history and sensitive private health information to AHI.

57.    AHI created and maintained records that contained sensitive health information regarding Mr. Hansen.

58.    Mr. Hansen received a letter from AHI, dated September 2, 2022, that was substantively identical to the one Ms. Brewster received

59.    Mr. Hansen has received additional scam phone calls since the Data Breach and believes that the increased scam calls are a direct result of the AHI breach.

**Plaintiff Donna Smith**

60.     Like the other plaintiffs, Plaintiff Ms. Smith was a patient of AHI for health imaging services.

61.     As a mandatory part of the new patient intake with AHI, Ms. Smith provided her PII, medical history and sensitive private health information to AHI.

62.     AHI created and maintained records that contained sensitive health information regarding Ms. Smith.

63.     Ms. Smith received a letter from AHI, dated September 2, 2022, that was substantively identical to the one Ms. Brewster and Mr. Hansen received.

64.     Ms. Smith has received additional scam phone calls since the Data Breach and believes that the increased scam calls are a direct result of the AHI breach.

## Defendants Failed To Comply With FTC Guidelines

65.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making.

66.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity

indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

67.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

68.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

69.     On information and belief, AHI failed to properly implement basic data security practices. AHI's failure to employ reasonable and appropriate measures to protect against unauthorized access to patient PII and PHI, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

70.     Defendant was at all times fully aware of the obligation to protect the PII and PHI of Plaintiffs and Class Members they were entrusted with. Defendants knew or should have known of the significant repercussions that would result from its failure to do so.

## **Defendant Failed To Comply With Industry Standards**

71.    Experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

72.    Several best practices have been identified that a minimum should be implemented by entities that obtain and store private health information, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data.

73.    A number of industry and national best practices have been published and should be used as a go-to resource when developing an institution's cybersecurity standards. The Center for Internet Security ("CIS") released its Critical Security Controls, and all healthcare institutions are strongly advised to follow these actions.[6] The CIS Benchmarks are the only consensus-based, best-practice security configuration guides both developed and accepted by government, business, industry, and academia.[7]

74.    Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and

---

[6] *Data Breaches: In the Healthcare Sector*, Center for Internet Security, *available at* https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited August 10, 2022).
[7] *CIS Benchmarks FAQ*, Center for Internet Security, *available at* https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq (last visited August 10, 2022).

protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

75.     On information and belief, AHI failed to meet the minimum standards of the following frameworks: the National Institute of Standards and Technology ("NIST") Cybersecurity Framework, the HIPAA Security Rule and Breach Notification Rule, the CIS Critical Security Controls, the Control Objectives for Information Related Technology ("COBIT"), ISO/IEC 27001, and HITRUST Common Security Framework, which are all established standards in reasonable cybersecurity readiness.

**Defendant's Practices Violate HIPAA**

76.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

77.     Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

78.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq.* These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendants permitted to be compromised and/or stolen. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

79.    AHI was responsible for ensuring the confidentiality, integrity and availability of PHI in its possession. On information and belief, AHI's Data Breach resulted from a combination of insufficiencies that demonstrate they failed to comply with safeguards mandated by HIPAA regulations.

### AHI's Security Breach

80.    AHI breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. AHI's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b. Failing to adequately protect Plaintiffs' and Class Members' Private Information;

    c. Failing to properly monitor its own data security systems for existing intrusions;

    d. Failing to ensure the confidentiality and integrity of electronic PHI it created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    e. Failing to properly implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to sufficiently implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

g. Failing to adequately implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

h. Failing to properly protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

i. Failing to properly protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

j. Failing to ensure compliance with HIPAA security standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4);

k. Failing to adequately train all members of its workforce effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b);

l. Failing to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform

17

data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR § 164.304's definition of "encryption");

m. Failing to fully comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, and;

n. Failing to adhere to industry standards for cybersecurity.

81.     As the result of computer systems in need of security upgrading, inadequate procedures for handling emails containing viruses or other malignant computer code, and employees who opened files containing the virus or malignant code that perpetrated the cyberattack, AHI negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

82.     Accordingly, as outlined below, Plaintiffs' and Class Members' daily lives were severely disrupted. What's more, they now face an increased risk of fraud and identity theft, including medical identity theft.

## Healthcare Data Breaches, Fraud and Identity Theft

83.     Cyberattacks are considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule: A breach under the HIPAA Rules is defined as "the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." *See* 45 C.F.R. 164.40.10.

84.     The FTC hosted a workshop to discuss "informational injuries" which are injuries that consumers suffer from privacy and security incidents, such as data breaches or unauthorized disclosure of data.[8] Exposure of personal information that

---

[8] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

a consumer wishes to keep private, such as sensitive medical information, sexual orientation, or gender identity, may cause both market and non-market harm to the consumer, such as the ability to obtain or keep employment and negative impact on consumer's relationships with family, friends and coworkers. Healthcare data breaches can erode patients' trust in the ability of providers to protect their data, and may be less willing to seek treatment. Consumers loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

85.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

86.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including

contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[9]

87.    A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of PII:[10]



88.    Moreover, theft of Private Information is also gravely serious. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

89.    Theft of PHI is gravely serious and can result in medical identity theft, where a thief uses the victim's information to see a doctor, get prescription drugs,

---

[9] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited August 11, 2022).
[10] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/.

buy medical devices, submit insurance claims, or get other medical care.[11] If the thief's health information is mixed with the victim's health information, it can negatively impact the victim's health insurance benefits and credit.

90.    Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

91.    It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs and when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[12]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

92.    Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

---

[11] *What To Know About Medical Identity Theft*, Federal Trade Commission (May 2021), *available at* https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft.

[12] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html.

93.     There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

94.     Because of its value, the medical industry has experienced disproportionally higher numbers of data theft events than other industries. As a vendor for at least thirty-six healthcare insurance entities, Defendants were entrusted with the Private Information of ten of thousands of individuals and knew or should have known of the threat of cyberattack and taken proactive steps to protect Private Information in its possession accordingly.

## Defendant Owed A Duty to Plaintiffs And Class Members

95.     AHI owed a duty to Plaintiffs and Class Members to provide reasonable security including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiffs and Class Members

96.     Defendant owed a duty to Plaintiffs and Class Members, who entrusted them with sensitive Private Information, to implement processes that would detect a breach of their data security systems in a timely manner.

97.     Defendant owed a duty to Plaintiffs and Class Members, who entrusted them with sensitive Private Information, to act upon data security warnings and alerts in a timely fashion.

98.     Defendant owed a duty to Plaintiffs and Class Members, who entrusted them with sensitive Private Information, to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information

from theft. The disclosure of such an inadequacy would be a material fact in the decision to purchase health care services from AHI, or to entrust Private Information with Defendant.

99.    Defendant owed a duty to Plaintiffs and Class Members, who entrusted them with sensitive Private Information, to disclose in a timely and accurate manner when data breaches occurred, and to ensure its vendors did same.

100.    Defendant owed a duty of care to Plaintiffs and Class Members because it was a  foreseeable and probable victim of any inadequate data security practices by Defendant.

101.    AHI collected Plaintiffs' and Class Members' Private Information. Defendant knew that a breach of its data systems would cause Plaintiffs and Class Members to incur damages.

## Plaintiffs' And Class Members' Damages

102.    Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

103.    Plaintiffs' Private Information, including their sensitive PII and PHI, was compromised as a direct and proximate result of the Data Breach.

104.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

105.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach.

106.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as medical services billed in their names, loans opened in their

names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

107.   Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to target such schemes more effectively to Plaintiffs and Class Members.

108.   Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

109.   AHI revealed that individuals affected by the Data Breach had additional Private Information that was compromised, including vital signs, medications, allergies, health screenings, and immunizations. When combined with publicly available information, this information would allow nefarious actors to paint a near complete health and personal history of Plaintiffs.

110.   Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiffs and Class Members overpaid, or authorized their insurance companies to overpay, AHI for a service that was intended to be accompanied by adequate data security. Part of the price Plaintiffs and Class Members paid to AHI, was intended to be used by AHI to fund adequate security of AHI's computer property and protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class Members did not get what they paid for.

111.   Plaintiffs and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts and records for misuse.

112.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

      a.  Finding fraudulent health care charges;

      b.  Purchasing credit monitoring and identity theft prevention;

      c.  Spending time on the phone with or at a healthcare organizations to dispute fraudulent charges;

      d.  Contacting health care institutions and closing or modifying financial accounts;

      e.  Closely reviewing and monitoring health care accounts for unauthorized activity for years to come; and

      f.  Addressing personal medical information that could potentially become public.

113.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of AHI, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

114.    Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life, including what ailments they suffer, whether physical or mental— may be disclosed to the entire world, thereby

subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

115.   Plaintiffs and Class Members face years of constant surveillance of their personal records, monitoring and loss of rights.

116.   As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and either have suffered harm or are at an imminent and increased risk of future harm.

## CLASS ALLEGATIONS

117.   Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated (the "Class").

118.   Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **Nationwide Class**
> All individuals in the United States who had Private Information stolen and/or compromised as a result of the Data Breach, including all who were sent a notice of the Data Breach.
>
> **Texas Subclass**
> All residents of Texas who had Private Information stolen and/or compromised as a result of the Data Breach, including all who were sent a notice of the Data Breach.
>
> **Georgia Subclass**
> All residents of Georgia who had Private Information stolen and/or compromised as a result of the Data Breach, including all who were sent a notice of the Data Breach.

119.    Excluded from each of the above Classes are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as his or her judicial staff and immediate family members.

120.    Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

121.    Each of the proposed classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

122.    <u>Numerosity</u>**.** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of tens of thousands of individuals who provided their Private Information to AHI, and whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

123.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

        a.   Whether Defendant engaged in the conduct alleged herein;

        b.   Whether Defendant's response was adequate;

        c.   Whether AHI unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information;

d. Whether AHI failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

e. Whether AHI's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

f. Whether AHI's data security systems prior to and during the Data Breach were consistent with industry standards;

g. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

h. Whether Defendant breached its duty to Class Members to safeguard their Private Information;

i. Whether computer hackers obtained Class Members' Private Information in the Data Breach;

j. Whether Defendant had a legal duty to provide timely and accurate notice of the data breach to Plaintiffs and the Class Members;

k. Whether Defendant breached its duty to provide timely and accurate notice of the data breach to Plaintiffs and the Class Members;

l. Whether AHI knew or should have known that its data security systems and monitoring processes were deficient;

m. What damages Plaintiffs and Class Members suffered as a result of Defendant's misconduct;

n. Whether Defendant's conduct was negligent;

28

o.  Whether Defendant's conduct was *per se* negligent;

p.  Whether Defendant was unjustly enriched;

q.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

r.  Whether Defendant's conduct violated state laws;

s.  Whether Plaintiffs and the other Class Members are entitled to additional credit or identity monitoring and are entitled to other monetary relief; and

t.  Whether Plaintiffs and the Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

124.  <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class member, was compromised in the Data Breach.

125.  <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

126.  <u>Predominance</u>. AHI engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored by AHI on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

127.   <u>Superiority</u>**.** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

128.   Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). AHI has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

129.   Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by AHI.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **NEGLIGENCE**
**(On behalf of Plaintiffs and the Nationwide Class or
alternatively the Subclasses against AHI)**

130.    Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

131.    AHI knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

132.    AHI knew, or should have known, of the risks inherent in collecting the Private Information of Plaintiffs and the Class Members and the importance of adequate security. Defendants knew or should have known that entities that maintain PHI are an attractive target for cyberattacks.

133.    Defendant owed a duty of care to Plaintiffs and the Class Members whose Private Information was entrusted to it.

134.    AHI's duties included, but were not limited to, the following:

   a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting patients' Private Information in its possession;

   b. To protect patients' Private Information using reasonable and adequate security procedures and systems that are compliant with the industry standards;

   c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the Indiana Deceptive Consumer Sales Act and Ohio Consumer Sales Practices Act;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, and

f. To promptly notify Plaintiff and the Class Members of the data breach, and to disclose precisely the type(s) of information compromise.

135. Defendants knew that a breach of its systems could damage hundreds of thousands of individuals, including Plaintiffs and the Class Members, and therefore had a duty to adequately protect their Private Information.

136. Plaintiffs and the Class Members were foreseeable and probable victims of any inadequate security practices, and Defendant owed them a duty of care not to subject them to an unreasonable risk of harm.

137. Defendant knew, or should have known, that the AHI computer systems did not adequately safeguard the Private Information of Plaintiff and the Class Members.

138. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within AHI's possession.

139. Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, failure to ensure or by acting with reckless disregard for, fair,

reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and the Class Members.

140.   Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and/or then provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

141.   Defendant acted with reckless disregard for the rights of Plaintiffs and the Class Members by failing to provide prompt and adequate individual notice of the data breach so that they could take measures to protect themselves from damages caused by the fraudulent use the Private Information compromised in the data breach.

142.   Defendant had a special relationship with Plaintiffs and the Class Members. Plaintiffs' and the Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, AHI had the ability to protect its systems (and the Private Information that it stored on them) from attack.

143.   Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised.

144.   As a result of Defendant's ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, Plaintiffs and Class Members are unable to take all the necessary precautions to mitigate damages by preventing future fraud.

145.   Defendant's breaches of duty caused a foreseeable risk of harm to Plaintiffs and Class Members to suffer from identity theft, loss of time and money to monitor their finances for fraud, and loss of control over their Private Information.

146.   As a result of Defendant's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, and will be used for fraudulent purposes.

147.   Defendants also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and the Class Members' Private Information and promptly notify them about the data breach.

148.   But for Defendant's wrongful and negligent breach of the duties it owed Plaintiffs and the Class Members, their Private Information either would not have been compromised or they would have been able to prevent some or all of their damages.

149.   As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and the Class Members have suffered damages and are at imminent risk of further harm.

150.   The injury and harm that Plaintiffs and the Class Members suffered (as alleged above) was reasonably foreseeable.

151.   The injury and harm that Plaintiffs and the Class Members suffered (as alleged above) was the direct and proximate result of Defendant's negligent conduct.

152.   Plaintiffs and the Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

153.   In addition to monetary relief, Plaintiffs and the Class Members also are entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
### (On behalf of Plaintiffs and the Nationwide Class or alternatively the Subclasses against AHI)

154.   Plaintiffs restate and reallege the allegations in paragraphs 1-129 as if fully set forth herein.

155.   Pursuant to Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

156.   Pursuant to HIPAA, 42 U.S.C. § 1302d *et seq.*, Defendants had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' Private Information.

157.   Plaintiffs and the Class Members are within the class of persons that the FTCA and HIPAA were intended to protect.

158.   Pursuant to the following state laws, Defendants operating in those states had a duty to those respective states' Plaintiffs and Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' Private Information:

      a.   Georgia Insurance Information and Privacy Protection Act, Ga. Code § 33-39-14, 21(b) *et seq.*,

      b.   Georgia Data Breach Statute, Ga. Code Ann. § 10-1-912(a) *et seq.*; and

      c.   Texas's data security statute, Tex. Bus. & Com. Code § 521.052.

159.   Plaintiffs and Class Members are within the class of persons these state laws were intended to protect.

160.   Defendants breached their duties to Plaintiffs and Class Members under the FTCA, HIPAA, and state data security statutes by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

161.   Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

162.   But for Defendant's wrongful and negligent breach of their duties owed to Plaintiffs and Class Members, they would not have been injured.

163.   It was reasonably foreseeable, particularly given the growing number of data breaches of health information that the failure to reasonably protect and secure Plaintiffs' and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to AHI's email servers, networks, databases, and/or computers that stored or contained Plaintiffs' and Class Members' Private Information.

164.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered injury and are entitled to damages in the amount to be proven at trial.

165.   In addition to monetary relief, Plaintiffs and the Class Members also are entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiffs and the Nationwide Class)

166.   Plaintiffs restate and reallege the allegations in paragraphs 1-129 as if fully set forth herein.

167.   Defendant AHI negligently and recklessly misrepresented material facts, pertaining to the sale of medical imaging services, to Plaintiffs and Class Members by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Plaintiffs and Class Members' Private Information from unauthorized disclosure, release, data breaches, and theft.

168.   Defendant AHI negligently and recklessly misrepresented material facts, pertaining to the sale of medical imaging services, to Plaintiffs and Class Members by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiffs' and Class Members' Private Information.

169.   Defendant AHI either knew or should have known that their representations were not true.

170.   In reliance upon these misrepresentations, Plaintiffs and Class Members purchased medical imaging services from AHI.

171.   Had Plaintiffs and Class Members, as reasonable persons, known of Defendant AHI's inadequate data privacy and security practices, or that AHI was not in compliance with the requirements of federal and state laws pertaining to the privacy and security of Class Members' Private Information, they would not have purchased medical imaging services from AHI, and would not have entrusted their Private Information to AHI.

172.   As direct and proximate consequence of Defendant AHI's negligent misrepresentations, Plaintiffs and Class Members have suffered the injuries alleged above.

**COUNT IV**
**GEORGIA DATA BREACH STATUTE**
**GA. CODE ANN. § 10-1-912(a)** *et seq.*
**(On behalf of the Nationwide Class, or alternatively, the Georgia Subclass)**

173.   Plaintiff Hansen and realleges the allegations in paragraphs 1-129 as if fully set forth herein.

174.   AHI is required to accurately notify Plaintiff Hansen and Georgia Class Members if it becomes aware of a breach of their data security system (that was reasonably likely to have caused unauthorized persons to acquire Plaintiff Hansen' and Georgia Class Members' Personal Information) in the most expedient time possible and without unreasonable delay under Ga. Code Ann. § 10-1-912(a).

175.   AHI is a businesses that own or license computerized data that includes personal information as defined by Ga. Code Ann. § 10-1-912(a).

176.   Plaintiff Hansen and Georgia Class Members' Personal Information (e.g., Member ID number) includes personal information as covered under Ga. Code Ann. § 10-1-912(a)

177.   Because AHI was aware of the breach to its security system (that was reasonably likely to have caused unauthorized persons to acquire Plaintiff Hansen's and Georgia Class Members' Personal Information), Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Ga. Code Ann. § 10-1-912(a).

178.   Thus, by failing to disclose the AHI Data Breach in a timely and accurate manner, Defendants violated Ga. Code Ann. § 10-1-912(a).

179.   As a direct and proximate result of Defendant's violations of Ga. Code Ann. § 10-1-912(a), Plaintiff Hansen and Georgia Class Members suffered damages, as described above.

Plaintiff Hansen and Georgia Class Members seek relief under Ga. Code Ann. § 10-1-912 including, but not limited to, actual damages and injunctive relief.

<u>**COUNT V**</u>
**GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**O.C.G.A. § 10-1-370, *ET SEQ*.**
**(On behalf of the Nationwide Class, or Alternatively, the Georgia Subclass)**

180.   Plaintiff Hansen restates and realleges the allegations in paragraphs 1-129 as if fully set forth herein.

181.   AHI, Plaintiff, and Georgia Subclass members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

182.   AHI engaged in deceptive trade practices in the conduct of its business, in violation of O.C.G.A. § 10-1-372(a), including:

    a. Representing that goods or services have characteristics that they do not have;

    b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    c. Advertising goods or services with intent not to sell them as advertised; and

    d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

183.   AHI's deceptive trade practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Georgia Subclass members' Personal Information, which was a direct and proximate cause of the AHI data breach;

b.  Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the AHI data breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Georgia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the AHI data breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Georgia Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Georgia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Georgia Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to

the security and privacy of Plaintiff and Georgia Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

184.    AHI's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of AHI's data security and ability to protect the confidentiality of consumers' Personal Information.

185.    AHI intended to mislead Plaintiff and Georgia Subclass members and induce them to rely on its misrepresentations and omissions.

186.    In the course of its business, AHI engaged in activities with a tendency or capacity to deceive.

187.    AHI acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Georgia Subclass members' rights.

188.    Had AHI disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, AHI would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

189.    As a direct and proximate result of AHI deceptive trade practices, Plaintiff and Georgia Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

190.    Plaintiff and Georgia Subclass members seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under O.C.G.A. § 10-1-373.

## COUNT VI

### DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT, Texas Bus. & Com. Code §§ 17.41, *ET SEQ.* (On behalf of Plaintiff Brewster and the Texas Subclass)

191.    Plaintiff Brewster, individually and on behalf of the Texas Subclass, repeats and realleges Paragraphs 1-129 as if fully alleged herein.

192.    AHI is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

193.    Plaintiff and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

194.    AHI advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

195.    AHI engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

  a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

  b.    Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

  c.    Advertising goods or services with intent not to sell them as advertised.

196.    AHI's false, misleading, and deceptive acts and practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Texas Subclass members' PHI and PII, which was a direct and proximate cause of the Data Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Texas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Texas's data security statute, Tex. Bus. & Com. Code § 521.052, which was a direct and proximate cause of the Data Breach

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Texas Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Texas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Texas Subclass members' Personal Information; and

g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Texas Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052.

197.   AHI intended to mislead Plaintiff and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

198.   AHI's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of AHI's data security and ability to protect the confidentiality of consumers' Personal Information.

199.   Had AHI disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, AHI would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

200.   AHI had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensity of the Personal Information in its possession, and the generally accepted professional standards in the medical industry. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiffs and the Texas Subclass, and AHI because consumers are unable to fully protect their interests with regard to their data, and therefore they placed trust and confidence in AHI. AHI's duty to disclose also arose from its:

     a. Exclusive knowledge regarding the security of the data in its systems;

     b. Active concealment of the state of its security; and/or

     c. Incomplete representations about the security and integrity of its computer and data systems, while purposefully withholding material facts from Plaintiffs and the Texas Subclass that contradicted these representations.

201. AHI engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). AHI engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

202. Consumers, including Plaintiffs and Texas Subclass members, lacked knowledge about deficiencies in AHI's data security because this information was known exclusively by AHI. Consumers also lacked the ability, experience, or capacity to secure the Personal Information in AHI's possession or to fully protect their interests with regard to their data. Plaintiffs and Texas Subclass members lack expertise in information security matters and do not have access to AHI's systems in order to evaluate its security controls. AHI took advantage of its special skill and access to Personal Information to hide its inability to protect the security and confidentiality of Plaintiffs and Texas Subclass members' Personal Information.

203. AHI intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from AHI's conduct is glaringly noticeable, flagrant, complete, and unmitigated. The AHI data breach, which resulted from AHI's unconscionable business acts and practices, exposed

Plaintiffs and Texas Subclass members to a wholly unwarranted risk to the safety of their Personal Information and the security of their identity or credit, and worked a substantial hardship on a significant and unprecedented number of consumers. Plaintiffs and Texas Subclass members cannot mitigate this unfairness because they cannot undo the data breach.

204.    AHI acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff and Texas Subclass members' rights. Numerous past data breaches in the medical industry put AHI on notice that its security and privacy protections were inadequate.

205.    As a direct and proximate result of AHI's unconscionable and deceptive acts or practices, Plaintiffs and Texas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information. AHI's unconscionable and deceptive acts or practices were a producing cause of Plaintiffs' and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

206.    AHI's violations present a continuing risk to Plaintiffs and Texas Subclass members as well as to the general public. Plaintiffs and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages; damages for mental anguish; treble damages for each act committed

intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper.

## COUNT VII
## DECLARATORY JUDGMENT
### (On behalf of Plaintiffs and the Nationwide Class or alternatively the Subclasses)

207.  Plaintiffs restate and reallege the allegations in paragraphs 1-129 as if fully set forth herein.

208.  Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statute described in this Complaint.

209.  Defendant owes a duty of care to Plaintiffs and the Class Members which required it to adequately secure Private Information and ensure its vendors did same.

210.  AHI still possesses Private Information regarding Plaintiffs and the Class Members.

211.  Plaintiffs allege that AHI's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

212.  Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a. Defendant owes a legal duty to secure Plaintiffs' and Class Members' Private Information and to timely disseminate notice

of a data breach under the common law and Section 5 of the FTCA;

b. Defendant is in breach of their duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiffs' and Class Members' Private Information; and

c. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs' and Class Members' Private Information.

213.   This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Plaintiffs' and Class Members' Private Information, including the following:

a. Order Defendants to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

b. Order AHI to comply with its obligations and duties of care, including, but not limited to:

   i. Not to use or further disclose the information other than as permitted by the contract or as required by law;

   ii. Implement appropriate safeguards to prevent unauthorized uses or disclosures of the PHI;

   iii. Report any use or disclosure not provided for by the agreement, including breaches of unsecured PHI;

   iv. Satisfy individuals' requests for copies of PHI, incorporate any amendments, and account for the disclosure;

     v.   Return or destroy PHI received from, created for, or received on behalf of, Caresource at the termination of the agreement; and

    vi.   Ensure that any with access to PHI agree to the same restrictions and conditions that apply to Caresource.

214.   If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at AHI. The risk of another such breach is real, immediate, and substantial. If another breach at AHI occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

215.   The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant have a pre-existing legal obligation to employ such measures.

216.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at AHI, thus eliminating the additional injuries that would result to Plaintiffs and Class Members whose Private Information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes described above, seek the following relief:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Classes requested herein;

b. Judgment in favor of Plaintiffs and the Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members;

e. An order requiring Defendant to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiffs and the Classes awarding them pre-judgment and post judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, and

g. An award of such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

DATED:  November 8, 2022

                              Respectfully submitted,

                              /s/ *D. Sean Nation*
                              D. Sean Nation (GA Bar 313022)
                              Mason A. Barney (*pro hac vice* to be filed)
                              SIRI & GLIMSTAD LLP
                              745 Fifth Avenue, Suite 500
                              New York, New York 10151
                              Tel: (212) 532-1091
                              E: mbarney@sirillp.com
                              E: snation@sirillp.com